## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | No. 3:10cr56 (MRK) |
| | : | |
| | : | |
| JARRELL SANDERSON | : | |

## RULING AND ORDER

On February 25, 2010, Defendant Jarrell Sanderson was indicted by sealed indictment on one count of Conspiracy to Commit Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1594(c); two counts of Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2); and two counts of Sex Trafficking by Force, Fraud or Coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(1). His trial is to commence on January 25, 2011. He now moves to suppress certain statements he made to the Federal Bureau of Investigation (FBI). *See* Mot. to Suppress [doc. # 82]. For the reasons that follow, the Court DENIES the Motion to Suppress.

On March 3, 2010, at approximately 10:45 a.m., Mr. Sanderson was arrested by officers from the Newington, Connecticut Police Department pursuant to a federal arrest warrant, and then transferred into the custody of the FBI. FBI agents transported Mr. Sanderson to the United States Courthouse in Hartford. The FBI agents informed Mr. Sanderson of his *Miranda* rights, and at 12:22 p.m., Mr. Sanderson executed a form waiving those rights. Thereafter, the FBI agents began to interview Mr. Sanderson. At no time did Mr. Sanderson request a lawyer.

At some point prior to Mr. Sanderson's arraignment later that afternoon, the Clerk's Office

1

of the District Court contacted Attorney Sebastian O. DeSantis and assigned him to represent Mr. Sanderson.  Attorney DeSantis proceeded to the U.S. Marshal's Office to speak with Mr. Sanderson. According to Mr. Sanderson, someone – possibly an FBI agent – walked into the interview room and notified Mr. Sanderson and the FBI agent questioning Mr. Sanderson that Mr. Sanderson's attorney had arrived and to stop speaking.  *See* Mem. in Supp. of Mot. to Suppress [doc. # 82-1] at 2; Sanderson Aff. [doc. # 82-1] at 12, ¶ 3.  Mr. Sanderson and the Government dispute what happened next.  Mr. Sanderson alleges that a female FBI agent continued to question him and asked if he gained any financial benefits from his actions, and Mr. Sanderson verbally responded to that question.  *See* Sanderson Aff. [doc. # 82-1] at 12, ¶¶ 4-5.  According to the Government, once the FBI agents were informed of Attorney DeSantis's wish to speak with Mr. Sanderson, the agents ceased their interview.  *See* Mem. in Opp'n to Mot. to Suppress [doc. # 90] at 2.  Attorney DeSantis was not formally appointed as defense counsel until later that afternoon, when Mr. Sanderson appeared before a United States Magistrate Judge for his arraignment.

Mr. Sanderson argues that statements he made after the FBI agents had been informed that counsel had been assigned to him were obtained in violation of his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination.  *See* Mem. in Supp. of Mot. to Suppress [doc. # 82-1] at 3.  He argues that disputed issues of fact exist as to whether his statements were voluntary because "he was not notified he had counsel" and "did not have an opportunity to request his counsel" before the statements were made.  *See id.* at 5.

A defendant's "Sixth Amendment right to counsel is triggered at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *Fellers v. United States*, 540 U.S. 519, 523 (2004)

(citation and quotation marks omitted; alteration in original).  That right does not preclude federal agents from questioning a defendant without his counsel present after the initiation of judicial proceedings, so long as the defendant has been "sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on [that] basis will be considered a knowing and intelligent one."  *Patterson v. Illinois*, 487 U.S. 285, 296 (1988); *see Montejo v. Louisiana*, --- U.S. ----, 129 S. Ct. 2079, 2085 (2009) ("Our precedents . . . place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent."); *United States v. Yousef*, 327 F.3d 56, 140 (2d Cir. 2003) ("It is settled law . . . that the attachment of the Sixth Amendment right to counsel, by itself, does not preclude a defendant from validly waiving his right to counsel."). "Th[e] standard for finding a waiver is the same under the fifth and sixth amendments."  *See United States v. Scarpa*, 897 F.2d 63, 68 (2d Cir. 1990).  Thus, where judicial proceedings have been initiated against the defendant, and the defendant has not already invoked his right to counsel, a waiver of *Miranda* rights serves as a waiver of his right to counsel under the Sixth Amendment. *See Yousef*, 327 F.3d at 141.

There is no question that Mr. Sanderson (who has a lengthy history of arrests, several for felonies) voluntarily waived his *Miranda* rights and then gave the FBI agents incriminating information relevant to the charges against him in this case.  Mr. Sanderson signed a written waiver of rights, including his right to have a lawyer present during his questioning, and nothing in Mr. Sanderson's brief suggests that his waiver of rights was not "voluntary, knowing, and intelligent." *See Montejo*, 129 S. Ct. at 2085.   Indeed, at the pre-trial conference, Mr. Sanderson's counsel confirmed that the motion to suppress was not based on an allegation that Mr. Sanderson's *Miranda*

waiver was involuntary.

The only disputed issue is whether the FBI agents continued questioning Mr. Sanderson after the agents were notified that Mr. Sanderson had been assigned a lawyer. For the purpose of resolving this motion, the Court will take as true Mr. Sanderson's claim that a female FBI agent continued questioning him after the agents were notified that Mr. Sanderson had been assigned a lawyer. There are no other disputed issues of material fact.[1]

According to Mr. Sanderson's affidavit, the only information he provided to the FBI agents after being informed that he had been assigned a lawyer and the lawyer wanted to meet with him was his statement in response to a female FBI agent's question about whether he had received financial gains from the activities at issue in this case. *See* Sanderson Aff. [doc. # 82-1] at 12. There is no basis for suppressing that statement. As the Supreme Court has noted, "even an *unrepresented* defendant can waive his right to counsel," since "neither the advice nor presence of counsel is needed in order to effectuate a knowing waiver of a Sixth Amendment right." *Montejo*, 129 S. Ct.. at 2086 n.2. In this context, moreover, "*Miranda* waivers typically suffice." *Id.*

Absent an invocation of his right to counsel, the mere appointment (or, in this case, assignment) of a lawyer is insufficient to require law enforcement officers to refrain from questioning a defendant, assuming, as here, that the defendant was informed of his *Miranda* rights

---

[1] While it is true that "a defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined," *Jackson v. Denno*, 378 U.S. 368, 380 (1964), the Court is not required to hold an evidentiary hearing when there is no allegation that a confession was mentally or physically coerced and no other disputed issue of material fact. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998) (finding no need for a suppression hearing where there was "no claim that governmental conduct coerced [the defendant's] decision [to confess]" (citation omitted)).

4

and knowingly and intelligently waived them.  *See id.* at 2088 ("[I]t would be completely unjustified to presume that a defendant's consent to police-initiated interrogation was involuntary or coerced simply because he had previously been appointed a lawyer.").  Furthermore, as the Second Circuit noted in *United States v. Scarpa*:

> [A] waiver of constitutional rights [may be] valid even though the defendant is not informed that an attorney retained without his knowledge by a third person has asked that the defendant not be questioned.  "Events occurring outside the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Miranda* warnings are sufficient to "let [the defendant] know what a lawyer could 'do for him' during the postindictment questioning: namely advise [the defendant] to refrain from making any such statements."

897 F.2d at 69.  (citations omitted; third and fourth alterations in original); *see Patterson*, 487 U.S. at 294.

Therefore, the FBI agents' awareness and non-disclosure of the fact that Mr. Sanderson had been assigned counsel would have no bearing on the validity of Mr. Sanderson's waiver.  And once Mr. Sanderson himself became aware of defense counsel's assignment and the counsel's desire to meet with him, Mr. Sanderson was still free to speak with the FBI agents.  *See Montejo*, 129 S. Ct.. at 2088.  Nothing in Mr. Sanderson's affidavit indicates that he invoked his right to counsel.  Instead, he verbally responded to the FBI agent's question, even though he knew a lawyer had been assigned to him.  As the Supreme Court has observed, "[n]o reason exists to assume that a defendant . . . who has done *nothing at all* to express his intentions with respect to his Sixth Amendment rights, would not be perfectly amenable to speaking with the police without having counsel present. And no reason exists to prohibit the police from inquiring." *See id.* at 2087-88 (emphasis in original).  While Mr. Sanderson claims in his brief that he "did not have the opportunity to request his counsel," *see* Mem. in Supp. of Mot. to Suppress [doc. # 82-1] at 5,  he alleges no facts that would support that claim.

5

Thus, the Court finds no violation of Mr. Sanderson's *Miranda* rights under the Fifth Amendment, and no violation of his Sixth Amendment right to counsel.

Finally, even if the Court construes Mr. Sanderson's brief to argue that despite his *Miranda* waiver, his statement was involuntary because it was obtained in violation of the more general due process guarantees of the Fifth Amendment, his argument still fails.  "[C]oercive police activity is a necessary predicate to finding that a confession is not 'voluntary'" for the purposes of the Due Process Clause.  *Colo v. Connelly*, 479 U.S. 157, 167 (1986) (explaining the voluntariness standard under the Due Process Clause of the Fourteenth Amendment); *see, e.g.*, *Caiozzo v. Koreman*, 581 F.3d 63, 70-71 (2d Cir. 2009) ("We see no reason to apply a standard for due process claims brought by state detainees under the Fourteenth Amendment that is different from the one that we employ for due process claims brought by federal detainees under the Fifth Amendment.").  The only material fact alleged by Mr. Sanderson is that "he was not notified he had counsel."  *See* Mem. in Supp. of Mot. to Suppress [doc. # 82-1 ] at 5.  Failure to notify a defendant that counsel has been retained for him by the Clerk's Office does not constitute conduct so offensive or fundamentally unfair as to render the defendant's statements involuntary for the purposes of due process.  *See Moran v. Burbine*, 475 U.S. 412, 432-33 (1986) (finding that failure of the police to notify a suspect that counsel had been retained for him, and the police misinforming the counsel that the suspect would not be interrogated on the night in question, did not constitute "conduct . . . so offensive as to deprive [the suspect] of the fundamental fairness guaranteed by the Due Process Clause of the Fourteenth Amendment").

In sum, taking Mr. Sanderson's factual allegations as true, there is nothing in the record that would permit this Court to suppress Mr. Sanderson's statements in response to the FBI agent's

question regarding financial gain. Mr. Sanderson's Motion to Suppress [doc. # 82] is therefore DENIED.

IT IS SO ORDERED,


/s/           Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut: **January 11, 2011**